UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. S2-4:23CR00470 MTS |
| | ) |
| YU-CHIEH HUANG, | ) |
| | ) |
| Defendant. | ) |

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

### 1. PARTIES:

The parties are the defendant, Yu-Chieh Huang, represented by defense counsel, Jeffrey Becker, Esq., and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

### 2. GUILTY PLEA:

Pursuant to Rule 11(c)(1)(A) & (B), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Counts 1 and 6 of the indictment, the United States agrees that it will move for the dismissal of Counts 2, 3, 4, 5, 7, 14, and 15 as to the defendant at the time of sentencing. The government further agrees that no further federal criminal prosecution will be brought in the Eastern District of Missouri relative to a conspiracy to engage in a scheme to commit

money laundering, wire fraud, mail fraud, bank fraud, access device fraud, and identity theft between on or about June 1, 2020 and May 8, 2024, of which the Government is aware at this time.

The parties also recommend that this Court impose a sentence of not less than 36 months and no more than 48 months incarceration.

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties is the result of negotiation and led, in part, to the guilty plea.

### 3. ELEMENTS:

As to Count 1, the defendant admits to knowingly violating Title 18, United States Code, Section 1349, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

*First*, that two or more persons, in some way or manner, agreed to try to accomplish a common and unlawful plan to commit wire fraud, mail fraud, and bank fraud, as charged in the indictment, and,

*Second*, that the defendant voluntarily and intentionally joined in the agreement when it was first reached or while it was still in effect; and,

*Third*, that, at the time the defendant joined in agreement, he knew the purpose of the agreement.

As to Count 6, the defendant admits to knowingly violating Title 18, United States Code, Section 1956(h), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

*First*, that two or more persons reached an agreement to knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which involved

2

the proceeds of specified unlawful activities, that is, wire fraud in violation of Title 18, United States Code, Section 1343, drug trafficking in violation of Title 21, United States Code, Section 841 and 846, and knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of such specified unlawful activity, and that while conducting the financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity; and

*Second*, that the Defendant voluntarily and intentionally joined in the agreement or understanding, either at the time it was first reached or at some later time while it was still in effect; and

*Third*, at the time the Defendant joined in the agreement or understanding, he knew the purpose of the agreement or understanding.

## 4. FACTS:

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

a.  Criminal organizations operating within the United States that are focused on the sale of controlled substances and/or committing online fraud schemes typically generate large amounts of U.S. currency. These organizations have difficulty moving, spending, and investing these criminal proceeds while evading law enforcement. As a result, many of these criminal organizations rely on third-party money laundering organizations ("MLOs") to launder these criminal proceeds for a fee or commission. These MLOs provide their expertise to disguise the

3

nature, source, locations, ownership, control, origin and/or destination of funds to avoid detection. Although these MLOs often present as networks of loosely affiliated members, they utilize business models with a clear structure and hierarchy.

  b. These MLOs are often not registered as money transmitting businesses in the United States nor do they hold the requisite state issued money transmitting licenses which would permit them to act as intermediaries and transfer funds domestically and internationally on behalf of other individuals or businesses. Nor are the MLOs registered with the United States Department of Treasury.

  c. The People's Republic of China places restrictions on its citizens from transferring money outside mainland China. To evade the governmental restrictions, some Chinese nationals in the United States enter into agreements with members of MLOs wherein the Chinese nationals accept deposits of U.S. dollars into their United States-based financial accounts by unknown individuals in exchange for the transfer of equivalent Chinese Yuan from their mainland China accounts to other mainland China accounts as designated by members of the MLO. The U.S. dollars deposited into the U.S. accounts by the MLOs are often comprised of criminal proceeds from drug trafficking and fraud schemes.

  d. Defendant was admitted to study at a California university for the Spring semester of 2020 through a nonimmigrant student visa. Consequently, the United States Department of Homeland Security issued Defendant an identification number as evidence of his lawful entry and residence into the United States. Defendant utilized his passport and his federally issued student identification number to open bank accounts at federally insured financial institutions.

4

e. As early as August 18, 2021, Co-Defendant Liang Jin ("Jin") recruited Defendant to serve as a "*money mule*" on behalf of a specific MLO. As a *money mule*, Defendant collected the proceeds of drug trafficking activities and various fraud schemes that targeted older adults and disbursed the proceeds based upon the instructions of Co-Defendant Jin and Co-Defendant Kaiyu Wen ("Wen"). Defendant received payments based upon the source of the illegal proceeds. Criminal fraud organizations paid money mules at a higher rate for the same services than were paid by drug trafficking organizations.

f. Neither Defendant nor Co-Defendants Jin or Wen participated directly in the distribution and sale of illegal drugs or perpetrated the fraud schemes against older adults. However, they knew the funds they were collecting and transmitting on behalf of the MLO were the proceeds of criminal activity. Because Defendant was dispatched to collect money from the homes of older adult fraud victims, he knew they were vulnerable to the fraud schemes being perpetrated against them.

g. Neither Defendant, Wen, nor the MLO were registered with the United States Government as money transmitting businesses nor did they hold money transmitting licenses in the State of Missouri or in any other state in which they operated the money transmitting business.

h. Defendant, Co-Defendant Jin, Co-Defendant Wen, other members of the MLO, and account holders, who accepted the deposits of the MLO's illegal proceeds, communicated with one another through WeChat, a Chinese instant messaging, social media, and mobile payment app with over one billion monthly active users.

i. Co-Defendants Jin and Wen instructed instructed Defendant to travel to designated parking lots and public areas to meet with unknown individuals and collect the proceeds of illegal

5

drug activity. After collecting the funds, Defendant used his personal financial accounts and identifying information to convert the illegal proceeds into cashier's checks made payable to Chinese nationals residing in the United States. Upon receipt of the cashier's checks, Defendant utilized WeChat to provide verification to Co-Defendants Jin and Wen that he had converted the cash into cashier's checks and that he had deposited the cashier's checks into the United States based financial accounts of various Chinese nationals.

    j.    By March 2, 2022, Defendant's financial institutions closed his personal accounts because Defendant conducted illegal financial transactions in the amount of $3,902,172 throughout the States of California and New York. To continue his participation in the conspiracy without incurring further scrutiny by financial institutions, Defendant and his co-conspirators engaged in the following activities between December 22, 2022 and July 26, 2023:

    i.    Defendant provided Co-Defendant Tsz Kan ("Kan") with passports of W.C.T., G.C.C., and C.S.C., citizens of Taiwan who had never entered the United States. Co-Defendant Kan used the passport information to produce counterfeit Department of Homeland Security Form I-20, "Certificate of Eligibility for Nonimmigrant Student Status," as evidence that W.C.T., G.C.C., and C.S.C. were lawfully authorized to reside in the United States;

    ii.    In fraudulently opening Chase Bank student checking accounts in the stolen identities, Defendant and Co-Defendant Kan presented the Taiwanese passports and counterfeit Form I-20s to Co-Defendant Vianne Chen, an employee of Chase Bank;

6

iii. Defendant, Co-Defendant Vianne Chen, and Co-Defendant Kan caused the debit cards fraudulently issued in the stolen identities to be mailed to Co-Defendant Kan's Chino Hills, California residence;

iv. Upon receipt of the debit cards from the mail, Co-Defendant Kan provided the cards to Defendant and Co-Defendant Jin;

v. Defendant traveled to Missouri, Kentucky, Texas, Ohio, Pennsylvania, Nebraska, Florida, New York, Maryland, Oregon, and Colorado with the fraudulently obtained debit cards to collect the proceeds of drug activity and fraudulent schemes against older; and

vi. Defendant recruited a student, who was visiting Defendant through a travel visa he sponsored, to participate in the money laundering scheme. Defendant assisted the student in opening a bank account in the United States and caused him to travel to a parking lot in Illinois and collect $195,000 in drug proceeds from an individual he had never met. Defendant and the student used the newly acquired bank account to convert the drug proceeds into a cashier's check;

vii. Co-Defendants Jin and Wen financed flights taken by Defendant Huang as he served as a money mule for the MLO. They also arranged for ride share services such as those provided by Uber so Defendant could: (1) collect money from participants in the drug trafficking organizations and from the homes of older adult fraud victims; (2) convert the illegal proceeds into cashier's checks at one bank branch; and (3) deposit the fraudulently obtained cashier's checks using different bank branches;

7

viii. Unknown individuals who targeted older adult victims with various fraud schemes induced their victims to take selfies with the fraud proceeds. Upon receipt of the images, the fraudsters forwarded the images and the victims' home addresses to other members of the MLO who would direct Co-Defendants Jin and Wen to dispatch Defendant to collect the boxes from the olde adult victims. Defendant met with the fraud victims at their homes and collected the containers of cash;

ix. Through We-Chat, Co-Defendants Jin and Wen instructed Defendant to use the fraudulently obtained debit cards bearing the names of G.C.C., W.C.T., and C.S.C. in the Eastern District of Missouri and the federal judicial Districts of Colorado and Oregon to convert the fraud proceeds into cashier's checks. Co-Defendants Jin and Wen also transmitted instructions to Defendant to deposit the fraudulently obtained cashier's checks into the financial accounts of S.P., G.L., and others or to return to California with the cashier's checks;

x. Upon completing the tasks, Defendant transmitted images of the cashier's checks and receipts of his deposits;

xi. Defendant also took photos of the victims' neighborhoods and himself holding cash received from the fraud victims and the individuals engaged in drug trafficking activities.

k. Defendant agrees and admits that he failed to comply with federal money transmitting registration regulations as he directed, managed, and supervised his Taiwanese visitor as they engaged in unlicensed money transmissions.

8

l. Defendant further agrees and admits that, as a result of his participation in the aforementioned money laundering conspiracy, he engaged in fraudulent financial transactions with the proceeds of drug activity and fraud crimes totaling $6,351,871 in California, Kentucky, Illinois, Texas, Ohio, Pennsylvania, Nebraska, Florida, New York, Maryland, Oregon, and Colorado. Defendant also agrees and admits that his conspiratorial conduct included an attempt to collect $88,000 from elderly tech support fraud victims residing in the Eastern District of Missouri;

m. Defendant further agrees and admits that Chase Bank is a federally insured financial institution;

n. Defendant further agrees and admits that he knew, or should have known, that the elderly victims of the fraud crimes were vulnerable; and

o. Defendant further agrees and admits that, as a result of his participation in the aforementioned conspiracy to commit bank fraud, mail fraud, and wire fraud and the money laundering conspiracy, he engaged in fraudulent financial transactions involving criminal activity totaling more than $6,351,000 in the Eastern District of Missouri and elsewhere.

## 5. STATUTORY PENALTIES:

The defendant fully understands that the maximum possible penalty provided by law for the crime of conspiracy to commit bank fraud, mail fraud, and wire fraud as charged in Count 1 to which the defendant is pleading guilty is imprisonment for not more than 30 years, a fine of not more than $1,000,000.00, or both. The Court may also impose no more than a 5-year period of supervised release.

In addition, the defendant fully understands that the maximum possible penalty provided by law for the crime of conspiracy to commit money laundering charged in Count 6 to which the

9

defendant is pleading guilty is imprisonment for not more than 20 years, a fine of not more than ~~$250,000.00, or both~~. $500,000, or twice the amount of funds laundered, or both. [initials] The Court may also impose no more than a 3-year period of supervised release. [initials] [initials]

### 6. U.S. SENTENCING GUIDELINES: 2023 MANUAL:

The defendant understands that Counts 1 and 6 are affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category.

### 6. U.S. SENTENCING GUIDELINES: 2023 MANUAL:

The defendant understands that Counts 1 and 6 are affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category.

#### a. Chapter 2 Offense Conduct – Conspiracy to Commit Wire Fraud, Mail Fraud, and Bank Fraud (Count 1):

(1) **Base Offense Level:** The parties agree that the base offense level is *7* as found in Sections 2B1.1(a)(1).

(2) **Chapter 2 Specific Offense Characteristics:** The parties agree that the following Specific Offense Characteristics apply: *18 levels* should be added pursuant Section 2B1.1(b)(1)(J) because the loss exceeded $3,500,000 but was less than $9,500,000; *2 levels* should be added pursuant to Section 2B1.1(b)(2)(A)(iii) because the offense resulted in substantial financial hardship to one or more victims; *2 levels* should be added pursuant to Section 2B1.1(b)(10)(B) and (C) because a substantial part of the scheme was conducted outside the United States and the offense otherwise involved sophisticated means; and *2 levels* should be added

10

pursuant to Section 2B1.1(b)(11)(B)(i) because the offense involved the production or trafficking of an unauthorized or counterfeit access device.

### b. Chapter 2 Offense Conduct - Conspiracy to Commit Money Laundering (Count 6):

**(1) Base Offense Level:** The parties agree that the base offense level is *26* as found in Sections 2S1.1(a)(2) and 2B1.1(b)(1)(J).

**(2) Chapter 2 Specific Offense Characteristics:** The parties agree that the following Specific Offense Characteristics apply: *6 levels* should be added pursuant to § 2S1.1(b)(1) because subsection (a)(2) applies and the defendant knew or believed that any of the laundered funds were the proceeds of, or were intended to promote, an offense involving the manufacture, importation, or distribution of a controlled substance and *4 levels* should be added pursuant to Section 2S1.1(b)(2)(C) because subsection (a)(2) applies and the defendant was in the business of laundering funds.

### c. Chapter 3 Adjustments:

**(1) Other Adjustments:** The parties submit that the following adjustments apply: *2 levels* should be added pursuant to Section 3A1.1(b)(1) because the defendant knew, or should have known that a victim of the offense was a vulnerable victim and *3 levels* should be added pursuant to Section 3B1.1(b) because the defendant was a manager or supervisor of a criminal activity that involved five or more participants.

**(2) Acceptance of Responsibility:** The parties recommend that *two levels* should be deducted pursuant to U.S.S.G. § 3E1.1(a) because Defendant has clearly demonstrated acceptance of responsibility. If this deduction is applied, and if Defendant is otherwise eligible, then the Government moves to deduct *one additional level* pursuant to U.S.S.G. § 3E1.1(b),

because Defendant timely notified authorities of the intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

**d. Estimated Total Offense Level:** The Parties estimate that the Total Offense Level for the violation charged in Count 1 is *33* and the Total Offense Level for the violation charged in Count 6 is *38.*

**e. Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

**f. Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

## 7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:

**a. Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**(1) Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea.

**(2) Sentencing Issues:** The parties agree to waive the right to appeal all sentencing issues, provided that the Court sentences the defendant to the parties' joint recommendation of 36 months' to 48 months' imprisonment. Otherwise, the adversely affected party—the defendant if the sentence is higher, or the Government if the sentence is lower—reserves the right to appeal only sentencing issues related to: (1) application of Sentencing Guideline offense-level adjustments (including those based on criminal history) not specifically set forth in the plea agreement or non-application of adjustments specifically set forth in the agreement; (2) calculation of the defendant's criminal history category; or (3) substantive reasonableness.

**b. Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**c. Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the

13

Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

## 8. OTHER:

**a. Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

**b. Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

**c. Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. As a special condition of supervised release, defendant agrees not to initiate any contact, direct or indirect, with victims of the offense or identified government witnesses. These conditions will be restrictions on the defendant to which the defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished.

**d. Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100.00 for each count for a total of $200, which the defendant agrees to pay at the time of sentencing. Money paid by the

14

defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

**e. Possibility of Detention:** The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

**f. Fines, Restitution and Costs of Incarceration and Supervision:** The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and costs of supervision. The defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately. The precise amount of restitution is unknown at the present time. Pursuant to Title 18, United States Code, Section 3663A, an order of restitution is mandatory for all crimes listed in Section 3663A(c). Regardless of the Count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Section 3663A(b) and the amount of loss agreed to by the parties, including all relevant conduct loss. The defendant agrees to provide full restitution to all victims of all charges in the indictment.

**g. Forfeiture:** The defendant agrees the stipulated facts above are sufficient to support forfeiture of certain assets pursuant to the applicable forfeiture authorities. Defendant specifically agrees to the entry of a forfeiture money judgment equal to $6,351,871, that being, the total value of any property constituting or derived from any proceeds traceable to the conspiracy to bank fraud, mail fraud and wire fraud, pursuant to Title 18, United States Code, Section 1349, and the conspiracy to commit money laundering, pursuant to Title 18, United States Code, Section 1956(h).

In addition, the defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the

15

United States. The defendant agrees to abandon his interest in all seized items and further agrees that said items may be disposed of or destroyed by law enforcement officials in any manner without further notice. By abandoning these items, the defendant waives any future rights to receive additional notice, a valuation of the items, or the opportunity to submit a claim to contest the disposition or destruction of the items that may exist under any policies or procedures of the seizing agency.

**9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:** In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in

16

fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

## 10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

## 11. CONSEQUENCES OF POST-PLEA MISCONDUCT:

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any condition of release that results in revocation, violates any term of this guilty plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its

17

option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12. NO RIGHT TO WITHDRAW GUILTY PLEA:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

9/23/2024
Date

TRACY L. BERRY 014753 TN
Assistant United States Attorney
111 South 10th Street, Room 20.333
St. Louis, Missouri 63102
(314) 539-2200

9/23 2024
Date

YU-CHIEH HUANG
Defendant

9/23/2024
Date

#74560MO
JEFFREY BECKER
Attorney for Defendant

10/8/24

18